By the Court.—Curtis, J.
The action is brought to recover $3,800 damages for the conversion of fifty shares of the stock of the Columbia Insurance Company.
The answer admits that plaintiff owned the stock in December, 1865, and denies all the other allegations in the complaint, and further sets up that the plaintiff received of Thomas R Foster $112.50, in satisfaction of the alleged liability and damages in the complaint claimed.
It appears the plaintiff owed the Columbia Fire Insurance Company $5,000. The loan was called in the latter part of December, 1865, and the plaintiff called upon Thomas R Foster, vice-president of the company, and said he could raise but $2,500. Foster told him he had a friend, the defendant, who would loan him the money upon his pledging 50 shares of the stock of the company.
The plaintiff thereupon paid $2,500, and gave his note for $2,500, payable May 4, 1866, to defendant’s order, and with it also as collateral a stock note payable at *75 one week’s notice for $2,500, and two "blank transfers of the stock with power of attorney. This took place December 30, 1865, and on the same day he received defendant’s check for $2,500.
The fifty shares of stock were transferred to defendant, who soon after endorsed the stock note to Foster. The stock, while standing in defendant’s name, was sold on the 3d of January, 1866, at auction for $3,776, and the proceeds received "by defendant, and paid "by him to Foster.
The company "became insolvent January 26,1866. May 1,1866, the stock was not worth more than $2.25 a share. Foster then told plaintiff he had got his fifty shares of stock, and could use them, and plaintiff then gave Foster an order to sell them, and Foster endorsed on the stock note a credit of $112.50 as for the stock sold, and the plaintiff took up the note, knowing nothing of the sale of the stock until July, 1867.
The court refused to dismiss the complaint, or to direct a verdict for defendant, but directed a verdict for plaintiff, to each of which rulings the defendant excepted. The court ordered the exceptions to "be heard in the first instance at General Term, and judgment suspended.
This cause has already been "before the General Term, on an appeal from a former trial (1 Sweeny II. 643). We are asked to review the former decision of the General Term on various grounds, but they do not seem to afford sufficient reasons for doing so. Unless a manifestly different case is made at the second trial, it is undesirable to depart from the settled rule in this respect.
For the purposes of this hearing, we must then consider it as already adjudged, that the stock note did not authorize a sale before default without notice to the pledgor. There is no evidence of any such notice, nor is it claimed that such a notice was ever given.
*76 Consequently, the sale of the stock on the 3d of January, 1866, was an illegal act, an unlawful conversion of the stock, and the plaintiff is entitled to his remedy for the wrong.
The question arises, whether the evidence discloses such a state of facts as entitles him to enforce this remedy against the defendant. The defendant was kept in the dark throughout the transaction, and received no benefit from it whatever, and insists that he and the plaintiff are two innocent parties, and that the loss must remain where it falls.
In determining which of two innocent parties must sustain a loss, the rule is, that as between the'two, the one who has suffered himself or his representative to be the means or instrument by which the loss has been created, must bear it.
In the present instance, the defendant allows himself to become the principal in a covert operation. He takes a note in his own name; he becomes the transferer of stock, which the note on its face discloses to be pledged to him as collateral. He transfers that stock. It is sold illegally, and he receives the check for the proceeds. He was bound to take notice of the contents of the stock note which he received, and which recited that these shares of stock had been deposited with him as collateral, and which, by its terms, confirmed the performance of certain acts in reference to that stock, to his, “payee’s, option” and discretion, and that only.
If, with this notice and knowledge, he parts with the stock that is pledged to him, and with closed eyes and ears is led to do or to be the instrument of a wrong to the pledgor, it is but just that he should be made responsible for it. His confidence in Mr. Foster, his not informing himself about the transaction, and his ignorance of his incurring any liability by his acts, or those that he might authorize Mr. Foster to perform for him, do not seem to constitute any satisfactory reason why *77 the plaintiff should, without fault on his part, illegally be deprived of his stock.
Every man who suffers himself to be put forward in a transaction must bear the legal consequences of it; and least of all should he escape when it is for a covert or sinister object. He may have his remedy against Mr. Foster or his estate, but he himself must be answerable to the plaintiff, unless it appears that the plaintiff received the $112.50 of Foster, set up in the answer in settlement and discharge of this demand.
In reference to this branch of the defence, the evidence shows that on the first of May, 1866, the plaintiff being ignorant that the stock had been sold before the failure of the company, and had realized $3,776, Foster told him that he had his fifty shares of stock, and that he could use them in some settlements he had to make. The stock was then worth from $2.00 to $2.25 per share. Plaintiff that day gave Foster an order to sell it, and on that day took up the stock note ; Foster first endorsing on it $112.50, as the sum for which the stock sold.
It is difficult to see how this sum of $112.50, endorsed on the note, constitutes an extinguishment of the plaintiff’s right to the actual proceeds of his stock. The evidence shows that the stock had been sold on the 3d of January previous, for a much larger sum, and that Foster knew of, and participated in, the sale. To claim that it constituted a satisfaction and discharge of plaintiff’s demand, because Foster told the plaintiff on the first of May following, when the stock had become nearly valueless, that he still had plaintiff’s fifty shares, and induced the plaintiff to give him an order for the sale of them, and then endorsed the supposed proceeds, $112.50, on the stock note, is perhaps insisting upon an unwarrantable application of legal principles. If there was, in fact, a misrepresentation made to the plaintiff, or a deception practised upon him to induce him to accept $112.50 as the proceeds of his stock, instead of the *78 actual proceeds, he is not precluded, upon the discovery of the deceit, from enforcing his remedy for the recovery of the real proceeds of it.
Nor is there much force in the claim that the plaintiff ratified "by this the preceding transaction, and looked to Foster alone as the party with whom he was dealing. Where the plaintiff is wrongfully kept out of possession of the facts, and induced to do acts in his ignorance of the facts, that may tend to his prejudice, and to the benefit of those who mislead him, or are instrumental in misleading him, they cannot insist that he shall be bound by those acts (Story on Agency, § 243; Nixon v. Palmer, 8 N. Y. R. 401).
The defendant’s exceptions cannot be sustained, and judgment should be ordered for the plaintiff on the verdict.